**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

LARRY BACA,

       Plaintiff,

v.                                                                         No. 15CV977 CG

CAROLYN W. COLVIN,
Acting Commissioner of SSA,

       Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court upon Plaintiff Larry Baca's *Motion to Reverse and Remand for Rehearing with Supporting Memorandum* (the "Motion"), (Doc. 18), filed July 8, 2016; Defendant's *Brief in Response to Plaintiff's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum* (the "Response"), (Doc. 20), filed September 6, 2016; and Plaintiff's *Reply in Support of Motion to Reverse and Remand for a Rehearing with Supportive Memorandum* (the "Reply"), (Doc. 21), filed September 21, 2016.

Mr. Baca filed an application for supplemental social security income and disability insurance benefits on August 7, 2012, alleging disability beginning August 15, 2001.[1] (Administrative Record ("AR") 136-141, 142-148). His application was denied initially on October 4, 2012, (AR 83-86), and again upon reconsideration on June 27, 2013. (AR 88-93). Mr. Baca filed a request for a hearing on July 23, 2013, (AR 94-95); and a hearing was held on June 10, 2014, before Administrative Law Judge ("ALJ") John W. Rolph. (AR 31-56). Mr. Baca and Leslie J. White, an impartial vocational expert

---

[1] Although Mr. Baca initially filed for both social security income and disability insurance benefits, it is not clear from the AR if he continued his claim for social security income. (*See* Doc. 20 at 1, n.1).

("VE"), testified at the hearing. (*Id.*). Mr. Baca was represented at the hearing by attorney Aaron W. Fields. (*Id.*). The ALJ issued a decision on September 16, 2014, finding that Mr. Baca was not disabled under the Social Security Act from December 31, 2012, through his date last insured. (AR 26). Mr. Baca then filed an application for review by the Appeals Council on October 3, 2014, (AR 8-10), which was summarily denied on August 28, 2015, (AR 1-6), making the decision of the ALJ the final decision of the Commissioner of the Social Security Administration (the "Commissioner") for purposes of this appeal.

Through new counsel, Michael Armstrong and Jonathan D. Woods, Mr. Baca filed the present appeal. Mr. Baca now argues that the ALJ committed reversible legal error by failing to: (1) analyze whether Mr. Baca's skin condition met or equaled any of the listings under 8.00 at step three; (2) develop the record concerning whether Mr. Baca had an infectious skin condition; and (3) provide adequate reasons for rejecting the medical opinion of consultative examiner Colleen Ryan, M.D. (Doc. 18 at 2).

The Court has reviewed the Motion, the Response, the Reply, and relevant law. Additionally, the Court has meticulously reviewed and considered the entire administrative record. Because the ALJ failed to analyze whether Mr. Baca met or equaled the listings for his severe impairment, the Court finds that the Motion should be **GRANTED** and the case be **REMANDED** for further proceedings.

I. **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir.

2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)). If substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003). A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, not the Appeals Council's denial of review. 20 C.F.R. § 404.981; *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214; *Doyal*, 331 F.3d at 760. An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley,* 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. While a court may not re-weigh the evidence or try the issues *de novo*, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ]'s findings from being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.     Applicable Law and Sequential Evaluation Process

For purposes of disability insurance benefits and supplemental security income, a person establishes a disability when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A), 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. § 416.905(a). In light of this definition for disability, a five-step sequential evaluation process ("SEP") has been established to determine whether a person is disabled within the meaning of the Social Security Act. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the SEP, the claimant has the burden to show that: (1) he is not engaged in "substantial gainful activity"; (2) he has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; and (3) his impairment(s) either meet or equal one of the "Listings"[2] of presumptively disabling impairments; or (4) he is unable to perform his "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i-iv), 416.920(a)(4)(i-iv); *Grogan*, 399 F.3d at 1261. If the ALJ determines the claimant cannot engage in past relevant work, he will proceed to step five of the evaluation process. At step five the burden of proof shifts to the Commissioner to show the claimant is able to perform other work in the national economy, considering her residual functional capacity ("RFC"), age, education, and work experience. *Grogan*, 399 F.3d at 1261.

## III.    Background

Mr. Baca alleges disability beginning August 15, 2008, due to a sun allergy, lower

---

[2] 20 C.F.R. pt. 404, subpt. P, app. 1.

4

back problems, and arthritis. (AR 142, 170-71). At step one, the ALJ found that Mr. Baca had not engaged in substantial gainful activity since the alleged disability onset date through his date last insured, December 31, 2012. (AR 17). At step two, the ALJ concluded that Mr. Baca was severely impaired by degenerative disc disease; hip and hand polyarthralgias/arthritis; and a sun allergy. (*Id.*). The ALJ additionally found that Mr. Baca's diagnoses of hypertension, abscesses, or cellulitis were not severe. (AR 17-18).

At step three, the ALJ determined that none of Mr. Baca's impairments, solely or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925, or 416.926. (AR 17-18). In making this determination, the ALJ stated that he considered all of the listings, "including listing 1.02(B) for the claimant's right and left hand arthritis, listing 1.04 for the claimant's lumbar degenerative disc disease, and listing 14.09 for the claimant's arthritis generally." (AR 18). The ALJ proceeded to step four and found that Mr. Baca's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely credible. (AR 20). The ALJ based his adverse credibility finding, and his ultimate disability determination, on Mr. Baca's testimony, medical records, and consultative examinations. (AR 20-23).

Ultimately, the ALJ found that Mr. Baca has the RFC to perform medium work with some exceptions. (AR 19). The ALJ determined that Mr. Baca: (1) can frequently climb ramps and stairs; (2) may occasionally stoop, kneel, crouch, crawl, and climb ladders, ropes, and scaffolds; (3) must avoid more than occasional exposure to extreme cold, heat, vibrations, and hazards such as unsecured heights; (4) may frequently

engage in handling and fingering with the bilateral upper extremities; and (5) must wear protective clothing when working outdoors to minimize exposure to direct sunlight. (*Id.*). The ALJ determined, based on testimony from the VE, that Mr. Baca is capable of performing his past relevant work as a forklift operator and as an auto detailer. (AR 23).

Although the ALJ found that Mr. Baca can perform his past relevant work, he moved to step five and inquired whether Mr. Baca would be able to perform any other work existing in significant numbers in the national economy. (AR 24-25). The ALJ noted that Mr. Baca was 57 years old on the date last insured and was therefore classified as an "individual of advanced age" in accordance with the Regulations. (AR 24). The ALJ also determined that Mr. Baca has at least a high school education and is able to communicate in English. (*Id.*).

The VE testified that an individual with Mr. Baca's same age, education, work experience, and RFC could perform the jobs of window cleaner and hand packager. (AR 25). Based on this analysis, the ALJ concluded that because Mr. Martinez is capable of performing work existing in significant numbers in the national economy, he is not disabled pursuant to 20 C.F.R. § 404.1520(f). (*Id.*).

## IV. Analysis

Mr. Baca argues that the ALJ committed reversible legal error by failing to: (1) analyze whether Mr. Baca's skin condition met or equaled any of the listings under 8.00 at step three; (2) develop the record concerning whether Mr. Baca had an infectious skin condition; and (3) provide adequate reasons for rejecting the medical opinion of consultative examiner Colleen Ryan, M.D. (Doc. 18 at 2). The Commissioner responds that the ALJ's decision was supported by substantial evidence, as Mr. Baca received

6

little medical treatment during the relevant time period. (Doc. 20 at 7).

### A. The ALJ's Consideration of Mr. Baca's Skin Condition at Step Three

Mr. Baca challenges the ALJ's consideration of his skin condition at step three. Mr. Baca contends that the ALJ failed to properly analyze whether Mr. Baca's skin condition met or equaled any of the listings under 8.00. (Doc. 18 at 2). Mr. Baca emphasizes that the ALJ is required to explain why a claimant meets a listing by making findings "supported by specific weighing of the evidence." (Doc. 18 at 9 (quoting *Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996))).

In response, the Commissioner maintains that Mr. Baca did not meet his burden of showing that his skin impairment met the severity requirements for any of the 8.00 listings. (Doc. 20 at 8). Further, the Commissioner argues that Mr. Baca cannot show that his skin condition meets the mandatory criteria of the 8.00 listings. (Doc. 20 at 9).

The ALJ considered Mr. Baca's skin condition and found that Mr. Baca has a severe sun allergy. (AR 17). The ALJ noted that although Mr. Baca has abscesses on his chest and thigh and cellulitis, the treatment that he received and the medical records do not indicate that his cellulitis is severe. (AR 18). Although the ALJ analyzed the listings for Mr. Baca's other severe impairments, the ALJ did not evaluate the listings for Mr. Baca's skin condition. (*See* AR 18-19). In his RFC formulation, the ALJ stated that Mr. Baca "must wear protective clothing when working outdoors to minimize exposure to direct sunlight." (AR 19). In making this determination, the ALJ noted the evidence of Mr. Baca's skin condition in the medical record and Mr. Baca's testimony. (AR 22-23).

### B. *Step Three Determinations*

At step three, the ALJ determines whether the claimant's impairment or combination of impairments either meet or equal one of the "listings" of presumptively disabling impairments. 20 C.F.R. § 416.920(a)(4)(iii). In this case, the ALJ stated that he considered "all listings," but specifically found that Mr. Baca's impairments did not meet the severity of the listings for arthritis or lumbar degenerative disc disease. (AR 18). The ALJ concluded that none of Mr. Baca's impairments meet or equal a listing level impairment. (AR 18-19).

There are several listings for severe skin disorders. Mr. Baca specifically notes listing 8.04 for chronic infections of the skin, listing 8.05 for dermatitis, listing 8.06 for hidradenitis suppurativa, and listing 8.07 for photosensitivity disorders. Skin disorders are severe when an individual has extensive skin lesions and they "result in a very serious limitation." Listing 8.00(C)(1). Even if a claimant's skin lesions do not meet the requirements of the listings, "if [a claimant has] frequent flareups, [the Commissioner] may find that [the] impairment is medically equal to one of [the] listings." *Id.* at 8.00(C)(2). Specifically, the listings require:

> 8.04 Chronic infections of the skin or mucous membranes, with extensive fungating or extensive ulcerating skin lesions that persist for at least 3 months despite continuing treatments as prescribed.
>
> 8.05 Dermatitis . . . with extensive skin lesions that persist for at 3 least months despite continuing treatment as prescribed.
>
> 8.06 Hidradenitis suppurativa, with extensive skin lesions involving both axillae, both inguinal areas or the perineum that persist for at least 3 months despite continuing treatment as prescribed.
>
> 8.07 Genetic photosensitivity disorders.

*Id.* at 8.04-8.07.

In analyzing whether a claimant's skin disorder meets the listings, an ALJ may not "merely state a summary conclusion that [a] claimant's impairments [do] not meet or equal" a listed impairment, because "[i]n the absence of ALJ findings supported by specific weighing of the evidence, [the Court] cannot assess whether relevant evidence adequately supports the ALJ's conclusion . . ., and whether he applied the correct legal standards to arrive at that conclusion." *Clifton*, 79 F.3d at 1009.

Here, the ALJ made findings supported by specific evidence with respect to Mr. Baca's arthritis and lumbar degenerative disc disease and why the conditions did not meet the relevant listings. (AR 18-19). However, the ALJ did not discuss the listings for skin disorders or analyze why Mr. Baca's skin condition did not meet the listings. The statement that the ALJ "considered all listings" is "a bare conclusion beyond meaningful judicial review." (AR 18); *Clifton*, 79 F.3d at 1009. As such, the Court will remand the case for the ALJ to analyze whether Mr. Baca'

The Commissioner's argument that Mr. Baca did not meet his burden to show that he met the severity requirements of the skin disorder listings is unavailing. Mr. Baca's medical records and the records from the Social Security Administration show that Mr. Baca suffered from lesions and scabs on multiple parts of his body. A medical record from 2007 noted that Mr. Baca had abscesses and dark cysts on his skin and that Mr. Baca's skin condition could be a result of methicillin-resistant staphylococcus aureus ("MRSA") as opposed to hydradenitis suppurativa. (AR 249). A medical record from 2009 also shows that he was diagnosed with cellulitis and abscesses on his skin, which were drained at that time. (AR 247-48). In 2012, during an interview with the Disability Determination Services, the interviewer noted that the "[s]kin on claimant's

face and hands was very irritated. Hands had scars and scabs all over them." (AR 168).

During a 2012 consultative examination, Raul Neftali Young-Rodriguez, M.D., found that Mr. Baca had "circular dark lesions mainly on sun-exposed areas, some of them appear to have scar formation, most of them do not. . . . These lesions are noted throughout his arms, and also on his forehead near the hairline." (AR 254-55). Dr. Young-Rodriguez also stated that Mr. Baca's rash "showed multiple areas of scar formation and discoloration from previous blistering and then healing other blisters" and diagnosed Mr. Baca with a sun allergy. (255-56). Although Mr. Baca's medical record is slim, these instances show that Mr. Baca's skin condition could be extensive and that he may suffer from frequent flareups.

At the hearing, Mr. Baca testified by telephone in a separate room because he had a rash on his hands and face that might have been infectious. (AR 35, 36-37). Mr. Baca testified that he has blisters on his hands, face, top of his head, and back. (AR 38). He stated that he stopped working due to the sores that "would break out" and that they are both painful and itch. (AR 39-40). Mr. Baca noted that at his last job, his sores got worse on his hands and face. (AR 45). Mr. Baca filled out a Function Report in 2013, where he stated that his skin reacts badly to sun exposure, and he had "scabs all over my hands, ears, and face and my body is covered with scars from previous exposure." (AR 202). In his Disability Report at the Appeals level, Mr. Baca stated that his sun allergy caused him pain when he performed physical movement and activities and he had sores that were sensitive and painful. (AR 216). He also detailed that he was unable to bathe at times due to his skin condition. (AR 218).

In his credibility analysis, the ALJ notes that Mr. Baca "is able to have occasional

exposure to the sun" and can leave his house to shop and do yard work for 30 minutes before having to return inside. (AR 22). Although Mr. Baca stated that he would try to do yard work occasionally, the record reflects that when he went outside, his skin condition worsened. (AR 39-40, 44-45, 177, 180, 202, 205, 206, 209, 216, 253). Additionally, Mr. Baca was diagnosed with an infectious skin condition, MRSA,[3] in 2007 and might have had an infectious skin condition at the time of the hearing; however, the ALJ did not explore this issue. The ALJ noted at the hearing that if Mr. Baca had a "communicable or contagious disease" the jobs in which the VE testified Mr. Baca could do "wouldn't make a lot of sense." (AR 32).The record does not reflect a definitive diagnosis for Mr. Baca's skin condition and he only visited the doctor a few times, most likely because he did not have health insurance.[4] "There are, however, no findings by the ALJ that affirmatively establish that" Mr. Baca could not meet the requirements for the skin disorder listings in 8.00. *Dye v. Barnhart*, No. 05-5182, 180 Fed. Appx. 27, 30-31 (10th Cir. May 9, 2006) (unpublished).

Here, contrary to the Commissioner's argument, "there is sufficient evidence in the record to create a question as to whether" Mr. Baca met the requirements of the listings. *Id.* at 30. "Because [the Court] cannot 'confidently say that no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way,'" this Court concludes that the ALJ committed reversible error. *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1145 (10th Cir. 2004)).

---

[3] *See* Doc. 18 at 3, n.2.
[4] *See* AR 37 (noting that Mr. Baca does not have health insurance), 41-42 (Mr. Baca stated that he never had health insurance), 247 (2009 note on the medical record that Mr. Baca was not sure that he could afford to continue to see the doctor).

## V. Conclusion

For the reasons discussed above, the Court concludes that the ALJ failed to properly analyze Mr. Baca's skin condition at step three. The Court does not decide any other issue raised by Mr. Baca, as these matters are mooted by the proceedings conducted or the disposition reached on remand.

**IT IS THEREFORE ORDERED** that Mr. Baca's *Motion to Reverse and Remand for Rehearing with Supporting Memorandum*, (Doc. 18), be **GRANTED** and that this case be **REMANDED** to the Commissioner for further proceedings

_____
THE HONORABLE CARMEN E. GARZA
UNITED STATES MAGISTRATE JUDGE

.